## LOUIS HILFER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7479, 13509.   Promulgated January 14, 1928.

A. E. James, Esq., for the petitioner.
J. A. Adams, Esq., for the respondent.

OPINION.

MURDOCK: Apparently the claim for special assessment has been abandoned. No evidence was introduced with respect to it and no mention was made of it either in the petitioner's oral argument or in its brief. So far as this feature of the case is concerned our judgment must be for the respondent.

The petitioner's remaining claim is that for the three years in question it was entitled to be classified for taxation purposes as a personal service corporation. In section 200 of the Revenue Act of 1918, the following definition appears:

The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive. * * *

As we have already said in *Appeal of Bryant & Stratton Commercial School, Inc.,* 1 B. T. A. 32—

These qualifying words, *primarily, regularly* and *actively,* and *material,* preclude any definitive classification. They make necessary the application of a flexible judgment * * * which must be applied to the facts of each case which comes before us. No intensive rule can be laid down, and it is not

surprising that the Commissioner's administration of this section of the statute has been an extremely difficult task. The very statement of a rule, if rigidly adhered to, would defeat the letter and intendment of the Act.

It is quite apparent from the evidence that this petitioner meets several of the requirements of the statute. But as to two of the requirements the evidence is not so clear and the respondent contends, and always has contended (as appears from his deficiency notice, and answers), that the income of the petitioner is not to be ascribed primarily to the activity of the principal owners or stockholders, but that employees who were not stockholders contributed substantially to the services rendered by the petitioner, and that capital, invested or borrowed, was a material income-producing factor. It was therefore incumbent upon the petitioner to produce evidence to overcome the presumption against it, to present facts to which we could apply our judgment and from which we could intelligently decide whether or not the respondent was in error in denying personal service classification to this petitioner.

On direct examination of its witnesses the petitioner showed that although profits had been made they had been distributed promptly by way of dividends to the stockholders. Cross-examination by the respondent brought out the fact that these dividends had merely been credited to the accounts of the stockholders and that to a large extent they had been left undrawn and at interest with the corporation. A glance at the balance sheets will show that the petitioner had the use of a considerable amount of capital, invested or borrowed, in addition to that carried in the stockholders' accounts.

The largest part of the petitioner's income was derived by way of commissions and brokerage for selling merchandise as an agent. The earning of this kind of income would not ordinarily require the use of much capital. Moreover, the sales of merchandise as a principal made by this petitioner would require but a very small amount of capital. Yet we see that the petitioner was borrowing money from its stockholders and from others and that it was paying interest thereon, and that it had invested capital in excess of $25,000. The witness, Louis Hilfer, attempted to explain the use of this capital by saying that it was only a normal amount for such a large business, that principals were sometimes slow in paying commission, and that in order to pay labor and clerical help and to pay the operating expenses of the business this amount of money was necessary. Of course, the mere fact that this capital was available to the petitioner is not determinative of the question of whether or not capital was a material income-producing factor, but the presence of such a large amount of borrowed and invested capital in the petitioner's balance sheets demands more of an explanation on the part of the petitioner than has been given in this case.

By this same witness, Louis Hilfer, the petitioner tried to show that its income in the taxable years is to be ascribed primarily to the activities of the principal owners or stockholders, and that there were no other elements materially contributing to the income of the petitioner, and particularly that only a small percentage of the petitioner's income could properly be ascribed to the activities of persons other than the petitioner's stockholders, in short, that the activities of salesmen did not prevent the stockholders from being primarily responsible for the income of the petitioner. He testified at some length in regard to the manner in which he at St. Louis and Koenig at Chicago, supervised the activities of salesmen under them. He stated that in his opinion the stockholders of the petitioner were responsible for at least 80 per cent of its gross income and that although it might appear that salesmen were responsible for 20 per cent of the gross income, they were, in fact, not responsible for even this percentage. However, there was no showing of any facts on which he based this opinion. From his testimony it was argued that the salesmen were mere messengers and that they were probably misnamed salesmen, that they had no authority or discretion in making sales, and that they only carried out the expressed will of one of the stockholders.

The petitioner has not disclosed the number of salesmen employed by it and the total amounts of salaries and commissions paid to nonstockholders during these years were shown only on cross-examination of the petitioner's witnesses. From this evidence it appears that during the taxable years the petitioner paid in salaries, commissions, bonuses, and other forms of compensation to nonstockholders over 2.35 times the amount which it paid during the same period as compensation to its stockholders. Some of the nonstockholding employees were no doubt neither managers nor salesmen but we have not been told how many such employees there were or how much they received. We have no reason to assume that their salaries accounted for any particular portion of the total compensation paid employees. From the figures in evidence it would seem that if less than 20 per cent of the gross income of the petitioner is to be ascribed to the activities of the nonstockholders, the petitioner could have more than tripled its income for the period before us by simply dismissing its nonstockholding salesmen and managers. In short, the contention of the petitioner that less than 20 per cent of its income is to be ascribed to the activities of its salesmen is apparently contradicted by figures in evidence relating to salaries and commissions. No attempt was made to explain this apparent contradiction.

In addition, we know that the petitioner had offices at Milwaukee, Wis., and at Indianapolis, Ind., which were in charge of nonstockholders. The supervision which Louis Hilfer claimed he exercised over the activities of the salesmen at St. Louis could hardly have been exercised, and, so far as we know, was not exercised by any stockholder over the activities of the salesmen at Milwaukee and at Indianapolis. We do not know the amounts of either gross income or net income to be allocated to the different offices. It may well be that a large part of the income of the petitioner must be ascribed to the Milwaukee and Indianapolis offices and to the activities of nonstockholders there employed, and, as we have previously stated, the evidence is contradictory in regard to the importance of salesmen at the St. Louis and Chicago offices. So that under all the facts in this case we are in doubt and we can not say that the income of the petitioner in the taxable years is to be ascribed primarily to the activities of the principal owners or stockholders.

In reaching this conclusion we have not been unmindful of the evidence favorable to the petitioner's contention. The sale of the product of the Carnation Milk Products Co. on commission was one of the important sources of income to the petitioner, probably the most important. A witness, who was vice president of this company at the time, stated that during the taxable years the petitioner's offices at Milwaukee and at Indianapolis had not been handling this account in a manner satisfactory to the Carnation Milk Products Co., that as a result the account was taken away from the Milwaukee office later, and some complaint was made to Hilfer in regard to the Indianapolis office, although the account was not taken away. The witness further stated that in his opinion the unsatisfactory handling of the account at these two offices was due to the fact that Hilfer was not able to give his personal attention to the conduct of the business at these offices. It also appears that when Hilfer left the petitioner to take a position in New York, the petitioner's business showed a loss, where formerly it had shown a profit, and that when Hilfer resigned his position in New York, and returned to the petitioner, it no longer had losses, but was shortly made to pay substantial profits. This testimony has a certain evidential value tending to prove that Hilfer was largely responsible for the petitioner's income, but with the other testimony favorable to the petitioner's contention, it fails in connection with all of the evidence to show that petitioner meets with all the requirements of the statute and that it should be classified as a personal service corporation.

*Judgment will be entered for the respondent.*